THE LUCAS COUNTY FARMERS INS. & AID ASSN. *v.* HALLETT.

(Decided December 10, 1934.)

*Mr. Ed. P. Buckenmyer,* for plaintiff in error.
*Mr. Otto H. Spengler* and *Mr. S. M. Douglas,* for defendant in error.

LLOYD, J.   Maggie M. Hallett brought an action in the Court of Common Pleas of Lucas county to recover an amount, with interest, alleged to be due on a mutual fire insurance policy of $1,000, issued to her by The Lucas County Farmers Insurance & Aid Association. The trial in the Court of Common Pleas resulted in a verdict and judgment in favor of the insured in the sum of $1,079.25. The insurance policy covered loss or damage by fire to a dwelling house located on property in Swanton township, Lucas county.   The insurance company contends that it is not liable on the policy in any sum because of the non-payment within the time specified in the policy of an assessment due thereon. The insured admits the non-payment of the assessment, but asserts that the assessment did not become payable until she received the notice required by the by-laws of the insurance company, and that such notice was not given to or received by her.

All assessments due on the policy prior to November 1, 1932, were paid.   On that date an assessment of $5.00 was levied on the property of the insured covered by the policy, said assessment being the proportionate policy share of the total losses paid by the company during the preceding year.   On November 20, 1932, a notice, of which the following is a part, was mailed to the insured:

"Mr. Maggie M. Hallet

"Your total assessment to November 1, 1932, is $5.00. Please pay same on or before December 20, 1932, to Michael C. Will, R. F. D. No. 22, Swanton, O., as per Section 9 of our By-Laws.

"James D. Coy, Secretary."

On this notice, preceding the above quoted part, was stated the rate of payment "on all insurance" in effect at various dates in 1932, the last line thereof reading "total assessment for the year ending November 5, 1932, 5 mills on the dollar." This notice was mailed to the insured by the secretary of the insurance company and was received by her on November 21, 1932. She paid this assessment of $5.00 on February 23, 1933. The policy held by the insured was effective from August 1, 1927, for the term, as expressed in Section 6 of the by-laws of insurer. Section 6 provided that policies are perpetual, but subject to the provisions for cancellation. Section 9 of the by-laws provided:

"The assessments on each member's property in case of loss or current expenses, shall be the same percent as the total loss or expenses is of the total amount insured. Each member's assessment shall be due and paid to the Agent within thirty days after the date of notification by the Secretary. If not so paid, the Secretary shall send the account to an Agent for collection, adding 25 percent penalty for delinquency, and if not then paid within sixty days after said date of notification, the Secretary shall proceed to collect by law. The insurance of a member delinquent more than forty days shall be void until all assessments and penalties are paid in full."

The portion of Section 9 which is important in the instant case is that assessments shall be due and payable within 30 days after the date of notification by

the secretary and that the insurance "of a member delinquent more than forty days shall be void until all assessments and penalties are paid in full." If the notice received by the insured was in accordance with the provisions of the policy of insurance, then the assessment became due and payable not later than December 21, 1932, and the "insurance" became "void" on February 1, 1933, and so continued until February 23, 1933, when the $5.00 assessment was paid. The dwelling house of the insured was destroyed by fire on February 12, 1933.

The evidence shows that the policy was procured on August 1, 1927, through J. P. Brick, an agent of the insurer, whose name as agent appears on the policy, the insurance company having an agent in each township in Lucas county, Brick, at the times in question, being the agent of the insurance company in Spencer and Harding townships. Michael G. Will was its agent in Swanton township, where the property of the insured was located. Coy, the secretary of the insurer, testified that occasionally an agent in one township would transact business in another township, if a member of the insurance company requested it. Mrs. Hallett had owned another piece of property, which had been sold by her to Fred and Cora Cæsar, and upon which thereafter she held a mortgage, the buildings on which property had also been covered by a policy of the insurance company, and she testifies that because prior to the sale of the property to the Cæsars she had paid assessments to Will on this insurance policy she assumed that the notice above quoted received by her related to an assessment due on the insurance on that property, which she said the Cæsars should pay. Referring to the notice received by her, she said:

"We received the notice all right but whether it was

that particular property or not, why, I did not know, but I always left my son take care of those things. He would generally get the mail and I always knew what was in it, though"; having "taken out the insurance with Mr. Brick, why we expected to deal with Mr. Brick."

Lawrence Hallett, the son, lives at Swanton, and is, and at the times in question was, a "real estate dealer." He says:

"When the notice came to our attention * * * we looked at these notices as a statement and it was a case of paying $5.00 for insurance to Michael Will, which on that date we knew we had no policy with Michael Will, and had had no dealings with him for quite a while, and I knew that we didn't owe him, and it was just laid aside; that was practically all there was to it for a short time."

On December 10, 1932, in behalf of his mother, he arranged through Mr. Brick for additional insurance on a poultry house located on the dwelling house property, for which an application fee of 95c was paid. Lawrence says:

"We thought it was kind of funny that we never did get notice from Mr. Brick that we owed him for insurance on this $1,000.00."

He further says that between the 20th and 25th of January he wrote to Brick inquiring whether "there was anything further due on that property where he recently insured the poultry house," in response to which he "received notice from him that there was nothing further due."

Lawrence further says, referring to the notice, that:

"It was filed away. Our situation,—we have a filing system there, like any other office, and it was not due at the time it was gotten and of course it was placed away with later papers."

The foregoing is the pertinent evidence, more or less

repeated, on the question of the sufficiency of the notice, non-compliance with which the company contends avoids the payment of the stipulated insurance on the burned dwelling house. At the time of the receipt of the notice, insured had but one policy of insurance with the company, the one in question. The notice stated that the total assessment for the year ending November 5, 1932, was 5 mills on the dollar, which was exactly the amount of the assessment due on the policy to November 1, 1932. It designated "the Agent" to whom the payment was to be made as "Michael C. Will, R. F. D. No. 22, Swanton, O." The insured property was located in Swanton township and there is no dispute as to the assessment being correct in amount. There is no evidence that the insured had or had ever had any other $1,000 policy of the company on any property owned by her. At the end of the notice was printed "James D. Coy, Secretary," who admittedly was the secretary of the company, and Section 9 of the by-laws provides that notice of assessments due from members of the company should be given to them by the secretary. If, theretofore, insured had been accustomed to pay the assessments to Brick, this notice clearly stated that this particular assessment was to be paid to Will. There is nothing in the policy, nor is there any evidence, that Brick had any authority to speak for the company as to whether assessments were or were not due and unpaid. That was the company's business, acting through its secretary. The only additional information which might have been included in the notice was a specific reference to the insured property, but in our opinion there is no substantial evidence tending to show that the insured was in any way misled by this omission; but, on the contrary, the undisputed fact, as we see it, is as stated by her son Lawrence that "it was not due at the time it was gotten and of course it was placed away

with later papers," and, we may add, forgotten until after the occurrence of the fire.

By the terms of the policy, the insured was a delinquent member for "more than forty days" at the time of the fire, and the insurance at that time was void. No waiver is involved because of the later payment of the assessment, for the reason that the payment thereof served merely to renew the insurance from that date, and had no retroactive effect.

Because the Court of Common Pleas erred in denying the motion of the insurance company for a directed verdict in its favor, the judgment of that court is reversed and a final judgment entered in favor of the company.

> *Judgment reversed and judgment for*
> *plaintiff in error.*

OVERMYER and KLINGER, JJ., concur.

KLINGER, J., of the Third Appellate District, sitting by designation in the Sixth Appellate District.